```
       IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**KENNETH RAY BATES,**

      **Plaintiff,**

  v.                                      Civ. Action No. 1:19CV171
                                                            (Judge Kleeh)

**UNITED STATES OF AMERICA,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER AFFIRMING AND ADOPTING**
**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE [DKT. NO. 32]**

### I.  Introduction and Procedural History

On September 5, 2019, *pro se* Plaintiff Kenneth Ray Bates ("Plaintiff"), an inmate incarcerated at FCI Hazelton in Bruceton Mills, West Virginia, initiated this case by filing a Complaint pursuant to the Federal Tort Claims Act ("FTCA") [Dkt. No. 1]. By Order entered October 1, 2019, Defendant was ordered to answer the Complaint [Dkt. No. 12]. On December 6, 2019, Defendant filed a motion to dismiss or in the alternative, motion for summary judgment with a memorandum in support with attachments and a motion to seal [Dkt. Nos. 18, 19]. Defendant's motion to seal was granted on December 9, 2019 [Dkt. No. 20]. A *Roseboro* Notice was also issued to Plaintiff [Dkt. No. 22]. Plaintiff did not file a response but, on December 18, 2019, he moved for appointed counsel [Dkt. No. 26]. That motion was denied [Dkt. No. 28]. Defendant filed a motion to dismiss for lack of prosecution on May 14, 2020

**MEMORANDUM OPINION AND ORDER AFFIRMING AND ADOPTING**
**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE [DKT. NO. 32]**

[Dkt. No. 30] because Plaintiff had not filed a Roseboro response. Plaintiff filed a response in opposition on May 26, 2020 [Dkt. No. 31].

On June 29, 2020, Magistrate Judge Michael J. Aloi entered a Report and Recommendation ("R&R"), recommending that the Court grant Defendant's motion for summary judgment [Dkt. No. 18] and that Plaintiff's Complaint [Dkt. No. 1] be dismissed with prejudice [Dkt. No. 32 at 28].

In the R&R, Magistrate Judge Aloi also informed the parties of their right to file objections within fourteen (14) days of being served with the R&R [Dkt. No. 32 at 28]. "Objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection" [Id.]. Plaintiff received the R&R on July 6, 2020 [Dkt. No. 34]. Plaintiff filed objections, titled a "Notice of Appeal Recommendations," on July 10, 2020 [Dkt. No. 33]. He argues that Defendant is acting as "Judge, Jury, prosecutor as well as an expert professional Doctor" in this case and has used deceptive "language of the law" to discredit the Plaintiff's claim of relief [Id. at 7]. Plaintiff contends that he proved the three elements necessary to prove negligence and that his Complaint should not be dismissed [Id.]. Plaintiff believes he should be afforded an expert witness and be able to cross examine the

2

Defendant's witnesses [Id.]. Plaintiff contends that an expert witness can give "Factual testimony of the bird flu avian, and how long it would take just to become" sick from bird droppings [Id.].

Defendant asserts that Plaintiff fails to state a claim upon which relief can be granted [Dkt. No. 18-1 at 4]. It argues that the duty of care owed to an inmate under West Virginia law is consistent with 18 U.S.C. § 4042, which provides that the BOP must exercise "ordinary diligence to keep prisoners safe and free from harm" [Id.]. See Little v. United States, 2014 WL 4102377, *14 (N.D. W. Va. 2014) (citations omitted). Under West Virginia law, to prove a negligence claim, a plaintiff must establish a duty owed by the defendant, a negligent breach of that duty, and injuries received thereby, that were a proximate cause from the breach of duty [Id. at 5]; Little, at *13. These elements must be proved by a preponderance of the evidence which Defendant claims that Plaintiff fails to do [Id.].

Defendant argues that Plaintiff fails to allege details of his actual contact with birds in the Housing Unit, and fails to show any causal connection between the injuries he claims to have sustained and the presence of the birds [Dkt. No. 18-1 at 5]. Defendant further contends that Plaintiff's claims of deliberate indifference can only be pursued in a civil rights case which Plaintiff fails to present [Id. at 6]. Defendant maintains that

Plaintiff's allegation regarding birds in the Housing Unit does not rise to the level of a viable claim [Id.].

## II.  Facts

A full recitation of the facts in this case is unnecessary here.  The Court relies on the detailed recitation of facts provided in Sections II, III and V of the R&R [Dkt. No. 32 at 2-5, 9-16].  An abbreviated review of the relevant facts follows below.

Plaintiff, Kenneth Ray Bates, Federal Register Number 42519-060, is currently incarcerated at FCI Hazelton ("Hazelton") serving a sentence for a conviction in the United States District Court for the Northern District of Ohio for Armed Robbery and Use of a Firearm During a Crime of Violence [Dkt. No. 32 at 2]. Plaintiff was sentenced to an aggregate prison term of 324 months on both counts, and on April 15, 2002, the district court's judgment was affirmed by the Sixth Circuit Court of Appeals [Id.]. Plaintiff was designated to Hazelton on January 20, 2015 [Id.].

On May 14, 2018, Plaintiff was seen at his Housing Unit for a Sick Call Health Services encounter for complaints of a runny nose, sore throat, chills, dry cough, and intermittent joint pain for the past 4 days [Dkt. No. 32 at 9].  He requested Tylenol for relief and was diagnosed with acute pharyngitis, or a sore throat

[Id.]. He received Tylenol, as needed for fever, pain, and inflammation [Id.].

On June 17, 2018, Plaintiff sent an email to "Ms. Bird" at Hazelton stating "that we have about five birds from the outdoors flying in the d-2unit, 3 of the birds was apprehended by the second shift officers. There is still two of the birds been flying around, they drink out of the water fountains where we get hot & cold water. there is different inmates in the unit that is sick" [Dkt. No. 32 at 10]. Plaintiff complained in the email that "when i come in from outdoors i automatically start coughing and sneezing. i have contacted some type of flu systems, i would appreciate being seen by medical" [Id.].

On June 18, 2018, Plaintiff presented to Health Services via Sick Call and complained of itchy eyes, cough, and green nasal discharge [Dkt. No. 32 at 10]. Plaintiff reported that there were birds living in the housing unit vents and that for the past five days, whenever he came from outdoors, he began coughing and sneezing; he denied having taken anything for the symptoms [Id.]. He denied fever or chills, and reported a single episode of diarrhea [Id.]. Plaintiff's vital signs were within normal limits, except for his blood pressure, which was slightly elevated at 134/90 [Id. at 11]. Upon examination, Plaintiff was not in distress, had clear nasal discharge, and sinus drainage [Id.]. He

5

also had fluid in the middle ear with no signs of acute infection [Id.]. A complete blood count ("CBC") was ordered, as was a chest x-ray [Id.]. He was diagnosed with allergic rhinitis, also known as hay fever, and instructed to follow up at Sick Call as needed [Id.]. Plaintiff was prescribed the following for his "allergic rhinitis": "Methylprednisolone acetate injection 80 mg/ml, 1 ml to be given intra-articularly [sic] one time"[1] [Id. at 12]. Plaintiff's CBC and chest x-ray were checked to rule out any additional abnormalities, and he was encouraged to purchase OTC Allergy relief and/or nasal spray [Id.].

On or about June 20, 2018, Plaintiff filed a Request for Administrative Remedy Information Resolution For, complaining of violations of "Rules 38, 41, 42, ad 43 (Misconduct) 3420.11 [Dkt. No. 32 at 12]. His request was that "[b]irds [be] removed from unit (unsanitary conditions)"[2] [Dkt. No. 32 at 12]. On June 20, 2018, the United Manager responded noting "Issue Un-resolved No

---

[1] An intra articular injection is one that is given into a joint, and its reference in the record appears to be a typographical error, possibly related to computer-assisted charting. Intra-articular injection would not be the method of administration of a steroid given for seasonal or perennial allergic rhinitis; rather, the provider likely meant to choose "intra muscular," which would be the proper way to administer the drug under those circumstances [Dkt. No. 32 at 11 and n.15].

[2] In the R&R, Magistrate Judge Aloi included details from Plaintiff's statement that was attached to the Informal Resolution Form [Dkt. No. 32 at 12].

Relief granted," and that "I have notified Safety and Facilities Depts" [Id.]. Plaintiff repeated his claim about the birds in filing a Request for Administrative Remedy [Id. at 12-13]. Plaintiff's chest x-ray was performed on June 26, 2018, and no acute cardiopulmonary disease was seen and his lungs were clear [Id. at 13].

Plaintiff returned to Health Services on June 29, 2018 for a Sick Call with complaints of sneezing, watery eyes, and rhinorrhea of several days' duration [Dkt. No. 32 at 13]. Plaintiff reported that he was exposed to bird dropping "antigens" he felt were responsible for his symptoms but reported that his symptoms were improving [Id.]. He denied fever, chills, shortness of breath, chest pain, cough, nosebleed, or coughing up blood, and his vitals were normal [Id.]. His lungs were clear but he was diagnosed with an acute upper respiratory infection and instructed to follow up as needed at Sick Call or with the Chronic Care Clinic [Id.].

On July 9, 2018, Plaintiff received a response to his Request for Administrative Remedy [Dkt. No. 32 at 13]. In relevant part, the response noted that six birds were residing in the ventilation system in Unit D2 and that the Safety and Facilities Departments were notified [Id.]. Both departments attempted to remove the birds from the ventilation system, and on June 25, 2018, the Facilities Department brought equipment to the unit and removed

7

five of the birds [Id. at 13-14]. The final bird had already been apprehended the day before [Id. at 14]. The response further states that there was no record of inmates reporting flu like symptoms [Id.].

Plaintiff filed a Regional Administrative Remedy Appeal on July 13, 2018, to "set the record straight" about the Warden's July 9, 2018 response [Dkt. No. 32 at 14]. Plaintiff disputed the Warden's statement that there was no record of inmates reporting flu like symptoms [Id.]. He also contends that the infestation lasted through July 8, 2018 and did not end on or about June 25, 2018 [Id.].

On July 20, 2018 Plaintiff presented on a Sick Call with complaints of soft loose stools for the past 4 to 6 weeks and the provider noted "[m]ild diarrhea symptoms previously reported without antidiarrheal treatment being initiated due to computer problem/error. Diarrhea symptoms have been worsening and now occur daily" [Dkt. No. 32 at 14]. Plaintiff denied fever/chills, abdominal pain, loss of appetite, weight loss [sic], nausea/vomiting, hematochezia (bright red blood in stool), black tarry stools, consumption of spoiled food, and steatorrhea (excretion of abnormal quantities of fat with the feces owing to reduced absorption of fat by the intestine) [Id.]. Plaintiff was

diagnosed with "diarrhea unspecified" and prescribed a Loperamide capsule[3] to take daily for seven days [Id.].

Plaintiff received a response to his Regional Administrative Remedy Appeal from the Regional Director, Mid-Atlantic Region, who noted that the birds were promptly removed from the ventilation system [Dkt. No. 32 at 15]. The response further noted that Plaintiff's medical record indicates no bird related illness [Id.] On August 24, 2018, Plaintiff filed a Central Office Administrative Remedy Appeal, stating that "the records show that I was treated for symptoms caused by exposure to strains of a subtype of the causative orthomyxovirus that has produced epidemics in birds and humans (which I was not tested for)" [Id.].

Plaintiff received a response to his Central Office Appeal from the Acting Administrator for National Inmate Appeals on November 18, 2018 [Dkt. No. 32 at 15]. The Acting Administrator concurred with the manner in which the Warden and Regional Director addressed your issue at the time of your lower-level grievances [Id.]. The response states that once the Unit Team became aware of the situation, the birds were immediately removed, and no further relief is warranted [Id.].

---

[3] Loperamide (brand name Immodium) is an anti-diarrheal medication [Dkt. No. 32 at 15, n.21].

Case 1:19-cv-00171-TSK   Document 35   Filed 11/30/20   Page 10 of 19   PageID #: 224

**BATES v. USA**                                           **Civ. Act. No. 1:19cv171**
**MEMORANDUM OPINION AND ORDER AFFIRMING AND ADOPTING
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE [DKT. NO. 32]**

Plaintiff filed his Administrative Tort Claim Form 95 on January 18, 2019, and it was assigned Administrative Claim Number TRT-MXR-2019-03149 [Dkt. No. 32 at 16]. The claim was denied by a letter that was received by Plaintiff on May 23, 2019 [Id.]. The denial letter states that after reporting to health services on June 18, 2018 with complaints of itchy eyes, cough, and runny nose, Plaintiff's blood work and a chest x-ray showed that his symptoms were related to seasonal allergies [Id.]. It also states that Plaintiff was seen in health services on May 14, 2018 for similar complaints, which was prior to the discovery of birds in the housing unit [Id.]. Because there was no evidence of negligence or deliberate indifference on behalf of BOP or medical staff, Plaintiff's claim was denied [Id.].

### III. Standard of Review

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [parties do] not object." Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous. See Diamond v. Colonial

Case 1:19-cv-00171-TSK   Document 35   Filed 11/30/20   Page 11 of 19   PageID #: 225

**BATES v. USA**                                       **Civ. Act. No. 1:19cv171**
**MEMORANDUM OPINION AND ORDER AFFIRMING AND ADOPTING
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE [DKT. NO. 32]**

Life & Accident Ins. Company, 416 F.3d 310, 315 (4th Cir. 2005). Plaintiff's Complaint will be liberally construed because he is proceeding pro se. Plaintiff's objections [Dkt. No. 33] are addressed to Defendant's arguments in support of the motion to dismiss as well as the Magistrate Judge's recommendation on the negligence claim. The Court will only address the objections directed to the recommendation on the negligence claim.

### IV.   Legal Standard

**a. FTCA**

As noted in the R&R, the FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States [Dkt. No. 32 at 16]. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In order to maintain a case against the United States under the FTCA, the Plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under the laws of the state in which the action accrued. Under West Virginia law, the Plaintiff must establish, by a preponderance of the evidence, three elements in a negligence suit: (1) a duty that the defendant owes to the plaintiff; (2) a negligent breach of that duty, and (3) injuries received as a proximate result from that breach. Webb v. Brown & Williamson Tobacco Co., 121 W.Va. 115, 2 S.E.2d 898, 899 (1939).

The BOP owes prisoners a duty of care that specifically requires the BOP to provide for the safekeeping, care, subsistence, and protection of all prisoners. See 18 U.S.C. § 4042; Muniz, 374 U.S. 150 (1963). Under 18 U.S.C. § 4042, the BOP must "exercise … ordinary diligence to keep prisoners safe and free from harm." Little, at *14 (citing United States v. Munitz, 280 F.Supp. 542, 546 (S.D.N.Y. 1968); Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976)). Under West Virginia law, the duty of care that the

BOP owes to inmates is one of reasonable care. See McNeal v. United States, 979 F.Supp. 431 (N.D. W. Va. 1997).

**b. Motion to Dismiss**

As to the failure to state a claim, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although *pro se* pleadings are to be liberally construed, a plaintiff must do more than make vague and conclusory statements to state a claim for relief. Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1993). A plaintiff must allege facts that actually support a plausible claim for relief. Iqbal, 556 U.S. at 678.

Courts liberally construe *pro se* documents and hold them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 5 (1980) (per curiam). The liberal construction that is afforded *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim, it should do so, but a district court need not rewrite a complaint to "conjure up questions never squarely

13

presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). "Liberal construction" does not mean that a court will ignore a clear failure in the pleadings to allege facts which set forth a claim cognizable in federal court." Weller v. Dep't. of Social Servs., 901 F.2d 387 (4th Cir. 1990).

### c. Motion for Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317-18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## V.   Discussion

The Court has reviewed the record and finds no error in the Magistrate Judge's R&R. There appears to be no dispute that in late May or at least June 7 or June 17, 2018, 5 or possibly 6 birds gained entry to the ventilation shafts of Plaintiff's unit, Unit D-2 at Hazelton [Dkt. No. 32 at 18]. Plaintiff made a complaint about the birds by an email to "Ms. Bird" on June 17, 2018, stating that 3 of the birds had already been apprehended "by the second shift officers" and that there were only 2 "flying around" [Id.]. Although the statement attached to Plaintiff's Informal Resolution Form filed on June 20, 2018 seems to contradict his email to "Ms. Bird," in the June 20, 2018 Request for Administrative Remedy, Plaintiff indicates the birds had been in the unit for over 3 weeks and still had not been removed [Id.]. In his July 13, 2018 Regional Administrative Remedy Appeal, Plaintiff states that "[f]rom the time of our May lockdown until July 8, the unit was infested with these birds" [Id. at 19]. Plaintiff failed to mention that by June 17, 2018, when he first reported the issue, only 2 birds were left, or that by June 25, 2018, the Facilities Department had removed all but 1 of the birds, and the final bird was extracted on July 8, 2018 [Id].

The record shows that BOP staff attempted to remove the birds as soon as they were notified and continued until the task was

complete. During much of the time Plaintiff alleged an infestation of birds and their "contagion," there may have only been 1 or 2 birds in the ventilation shafts. This can hardly be characterized as gross negligence by the BOP or a lengthy infestation. Plaintiff offers no detailed allegation regarding the duty owed to him by the BOP, and he references irrelevant environmental rule violations. There is no proof that Plaintiff's "entire unit" was infected, and the allegations of his personal injuries are speculative with no causal connection shown between Plaintiff's actual exposure to bird droppings and the medical issues for which he sought treatment.

While not in the context of claim under the FTCA, courts analyzing cases that allege a constitutional deprivation have found that "a prolonged pest infestation" may be considered a deprivation sufficient to constitute a constitutional violation. See Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008) (citation omitted). In doing so, the court must consider "how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have … and how long the infestation continues." See Thomas v. Illinois, 697 F.3d 612, 614-15 (7th Cir. 2012). The record before the Court establishes that Defendant addressed the birds inside the

ventilation system of Plaintiff's Housing Unit as soon as it was notified. The "infestation" alleged by Plaintiff was neither so extensive that personal contact with the birds or droppings occurred nor of such a duration that a significant risk of disease was created.

Moreover, Plaintiff's allegations of injury lack any support in the record. The R&R identifies the symptoms of avian flu, as well as some of the potential complications once infected [Dkt. No. 32 at 20]. Plaintiff's records do not support his claim that treatment for seasonal allergy symptoms and an episode of diarrhea were caused by an exposure to "strains of a subtype of the causative orthomyxovirus that has produced epidemics in birds and humans" [Id. at 21]. Plaintiff failed to allege facts that show he personally came into contact with bird droppings which is necessary to become infected with avian flu [Id. at 22]. As found by the Magistrate Jude, the record contradicts Plaintiff's claims and he has not produced evidence of a breach of duty on the part of the Government, or any evidence of damages beyond speculation. With no proof of the elements necessary for a negligence action, Plaintiff's claim must fail.

In his objections, Plaintiff asserts that he should be entitled to an expert to help him prove his negligence claim. However, this is not a medical negligence case and Plaintiff's

medical records are clear – his health issues were not determined by medical staff to be causally related to the avian flu or exposure to bird droppings. His conclusory statements otherwise do not change the record. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The request for an expert witness is untimely and unwarranted.[4] Plaintiff's Complaint fails to state a claim upon which relief may be granted and Defendant is entitled to dismissal of the Complaint.

### VI. Conclusion

For the reasons stated herein and as detailed in the Magistrate Judge's R&R [Dkt. No. 32], the Court **ORDERS** that

(1) The Report and Recommendation [Dkt. No. 32] be **AFFIRMED** and **ADOPTED** in its entirety;

(2) The Plaintiff's Objections to the R&R [Dkt. No. 33] be **OVERRULED**;

---

[4] Plaintiff filed a motion to appoint counsel [Dkt. No. 26] in this matter which was denied [Dkt. No. 28], but he never requested the assistance of an expert witness until he referenced the same in his objections to the R&R.

(3) Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Dkt. No. 18] be **GRANTED**;

(4) Defendant's Motion to Dismiss for Lack of Prosecution [Dkt. No. 30] be **DENIED AS MOOT**; and

(5) The Complaint [Dkt. No. 1] be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

The Court further **DIRECTS** the Clerk to enter judgment in favor of Defendant.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and the pro se Plaintiff, by certified mail, return receipt requested.

**DATED:** November 30, 2020

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE